WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

ALAN T. SHEEHAN, )
)
                     Plaintiff, )
)
       vs. )
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security )
Administration, )
)     No. 3:13-cv-8203-HRH
                Defendant. )
_____ )

O R D E R

    This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff has timely filed his opening brief,[1]

to which defendant has responded.[2]  Oral argument was not requested and is not deemed

necessary.

_____

[1]Docket No. 19.

[2]Docket No. 22.

Procedural Background

Plaintiff is Alan T. Sheehan.  Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

On April 14, 2010, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that he became disabled on January 4, 2010.  Plaintiff alleged that he was disabled because of back surgery, severe chronic back pain, and bad knees.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on January 4, 2012, an administrative law judge (ALJ) denied plaintiff's claim.  On June 14, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's January 17, 2012 decision the final decision of the Commissioner.  On August 9, 2013, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

General Factual Background

Plaintiff was born on September 2, 1959.  Plaintiff was 52 years old at the time of the administrative hearing.  Plaintiff is married and has a high school education.  His past relevant work includes work as a project manager, general manager, estimator, and field superintendent.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the

-2-

Social Security Act through December 31, 2014."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 4, 2010, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments:

---

[3]Admin. Rec. at 29.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 29.

hypertension, low back pain, status post low back surgery x 2 in 1993 and 2000, [and] bilateral knee pain, post knee surgery x 4 between 1975 and 2008...."[6]

At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, with special consideration given to sections 1.02 and 1.04 of the Listings...."[7]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a), with sitting up to 6 hours per 8-hour day, standing and walking up to 2 hours per 8-hour day, lifting up to 10 pounds occasionally, no climbing ladders, ropes or scaffolds, the need to avoid concentrated exposure to hazardous heights and moving machinery, the need for frequent changes in position, and no repetitive bending or twisting at the waist.[8]

The ALJ found that plaintiff was "generally credible" but found his credibility "weaken[ed]" due to his receipt of unemployment insurance benefits "because receipt of such benefits is commensurate with the understanding that the claimant is able-bodied and

---

[6]Admin. Rec. at 29.

[7]Admin. Rec. at 29.

[8]Admin. Rec. at 30.

actively looking for work...."[9]  The ALJ also noted that plaintiff had "submitted up to 16 job applications since his alleged onset date," which "implies he feels he could do some sort of work activity[.]"[10]  The ALJ also found plaintiff less than credible because he was taking only ibuprofen yet complained that his back pain was 7/10 and because he reported that his back pain and left lower radicular symptoms were better since starting physical therapy.[11]  The ALJ found plaintiff less than credible because Dr. Merkel's[12] physical examination findings were normal on October 19, 2010 and January 1, 2011.[13]  And finally, the ALJ appeared to find plaintiff less than credible because  of his activities of daily living.[14]

The ALJ gave "greater weight" to the opinions of Dr. Merkel[15] and "less weight" to

_____

[9]Admin. Rec. at 31.

[10]Admin. Rec. at 30.

[11]Admin. Rec. at 31.  Plaintiff saw Ty Harper at Harper Physical Therapy 20 times between April 26, 2010 and June 24, 2010.  Admin. Rec. at 258, 276-279, 281-290, 293-297, 308-309, 316-318, & 320-322.

[12]Mary Merkel, M.D., at the Spine Institute of Arizona treated plaintiff from June 2, 2009 through October 19, 2010.  Admin. Rec. at 227-238, 327-335, & 366-368.

[13]Admin. Rec. at 32.

[14]Admin. Rec. at 31.

[15]On June 1, 2010,  Dr. Merkel noted that plaintiff was capable of doing light duty work 20 hours per week.   Admin. Rec. at 335.   On July 29, 2010, Dr. Merkel "[r]ecommend[ed] that [plaintiff] be on permanent light duty.  No lift, push, pull more than
(continued...)

the opinion of Dr. Briggs.[16]  The ALJ considered Dr. Rowley's opinion[17] but assigned no

specific weight to it.  And, the ALJ gave the opinions of Drs. Keer[18] and Anderson[19] some

weight.[20]

At step four, the ALJ found, based on the testimony of the vocational expert, that

_____

[15](...continued)
25 pounds, frequent positional change and no repetitive bending or twisting at the waist.
Admin. Rec. at 329.

[16]Admin. Rec. at 32-33.   Brian Briggs, M.D., examined plaintiff on November 15,
2010, and opined that plaintiff did not have any condition that would impose any
limitations for 12 continuous months.  Admin. Rec. at 347.

[17]Dr. Rowley at the Arizona Spine Institute began treating plaintiff on January 11,
2011.  Admin. Rec. at 362.  On December 12, 2011, Dr. Rowley opined that plaintiff had
moderately severe pain, which was defined as "pain [that] seriously affects ability to
function."  Admin. Rec. at 353.

[18]On July 9, 2010, Nadine Keer, D.O., opined that plaintiff could occasionally
lift/carry 20 pounds; frequently lift/carry 10 pounds; could stand/walk for 6 hours; sit for
6 hours; was unlimited as to pushing and pulling; could frequently climb ramps/stairs;
could occasionally climb ladders/ropes/scaffolds; was unlimited as to balancing, stooping
and crouching; could occasionally kneel and crawl; and should avoid concentrated
exposure to hazards such as machinery and heights.  Admin. Rec. at 83-84.

[19]On December 17, 2010, Lloyd Anderson, M.D., opined that plaintiff could
occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours;
sit for 6 hours; was unlimited as to pushing and pulling; could frequently climb
ramps/stairs; could occasionally climb ladders/ropes/scaffolds, crawl and kneel; was
unlimited as to balancing, stooping, and crouching; and should avoid concentrated
exposure to hazards such as machinery and heights.  Admin. Rec. at 94-95.

[20]Admin. Rec. at 33.

plaintiff could perform his past relevant work as a project manager and estimator.[21]

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from January 4, 2010 through the date of this decision...."[22]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  <u>Id.</u>  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  <u>Id.</u>  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of

---

[21]Admin. Rec. at 33.

[22]Admin. Rec. at 33.

supporting evidence.'" <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff argues that the ALJ erred in rejecting Dr. Rowley's opinion and Dr. Merkel's

opinion.   Plaintiff also argues that the ALJ failed to support his RFC with substantial

evidence and that the ALJ erred at step four.   Finally, plaintiff argues that the ALJ erred

in finding him less than credible.

<u>Dr. Rowley</u>

On December 12, 2011, Dr. Rowley opined that plaintiff had moderately severe pain,

which was defined as "pain [that] seriously affects ability to function."[23]   The ALJ

considered Dr. Rowley's opinion but assigned no specific weight to it.[24] The ALJ noted that

Dr. Rowley "opined [that] the claimant's pain was precipitated by movement/overuse.

However, he provided no estimates of associated restrictions or limitations....   He further

noted in reference to questions #5 and 6 on [the medical source statement] form that it was

'unknown to him.'"[25]   Question 5 asked "[h]ow often is your patient's experience of pain

sufficiently severe to interfere with attention and concentration" and Question 6 asked "[t]o

---

[23]Admin. Rec. at 353.

[24]Admin. Rec. at 33.

[25]Admin. Rec. at 33.

-8-

what degree does your patient experience deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)?"[26]

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).   Dr. Rowley's opinion that plaintiff's pain would seriously affect his ability to function was contradicted by Drs. Briggs, Keer, and Anderson.  Thus, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Rowley's opinion.

The ALJ rejected Dr. Rowley's opinion because "he provided no estimates of associated restrictions or limitations", but rather answered the two questions that related to specific restrictions or limitations as "unknown to him."[27]  Plaintiff argues that this was not a legitimate reason because the vocational expert had no difficulty in assessing the

---

[26]Admin. Rec. at 353-354.

[27]Admin. Rec. at 33.

effect "moderately severe pain" would have on a person's ability to function.   The vocational expert testified that someone who had "moderately severe pain" as Dr. Rowley opined plaintiff had "could not sustain employment."[28]   Plaintiff thus argues that the fact that Dr. Rowley answered "unknown to me" to the two specific questions about functional limitations does not translate into a complete failure to provide restrictions and limitations. Plaintiff insists that it was sufficient that Dr. Rowley found that plaintiff had severe pain, which was defined as seriously affecting the ability to function.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Dr. Rowley's opinion was brief and conclusory and thus the ALJ did not err in rejecting it.

Dr. Merkel

On June 1, 2010, Dr. Merkel opined that plaintiff could do light work for 20 hours per week.[29]   On July 29, 2010, Dr. Merkel recommended that plaintiff be "on permanent light duty.  No lift, push, pull more than 25 pounds, frequent positional change and no repetitive bending or twisting at the waist."[30]  The ALJ gave Dr. Merkel's opinion "greater

---

[28]Admin. Rec. at 73.

[29]Admin. Rec. at 335.

[30]Admin. Rec. at 329.

weight."[31]  Plaintiff contends, however, that the ALJ failed to recognize that Dr. Merkel's assessment was inconsistent with the ability to sustain employment.  Plaintiff argues that Dr. Merkel opined that he was limited to working 20 hours per week.  An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96–8p.  Thus, plaintiff argues that if Dr. Merkel opined that he could only work 20 hours per week, then her opinion could not be substantial evidence supporting the ALJ's assessment that plaintiff retained the capacity for full-time work.

It is not clear how many hours a week Dr. Merkel was opining plaintiff could work in July 2010.  The ALJ may have assumed that because Dr. Merkel did not indicate a specific number of hours in July 2010, that Dr. Merkel meant that plaintiff could work 40 hours per week.  On the other hand, as plaintiff points out, the ALJ also noted that the functional limitations that Dr. Merkel found in July 2010 "were essentially unchanged from the June 1, 2010 exam, when Dr. Merkel advised for light duty work of 20 hours per week...."[32] If plaintiff's functional limitations were unchanged from June 2010 to July 2010, then it may follow that plaintiff was still limited to 20 hours per week.  Because Dr.

---

[31]Admin. Rec. at 32.

[32]Admin. Rec. at 32.

Merkel's opinion was unclear, the ALJ should have sought some clarification from Dr. Merkel, especially if he were going to give her opinion "greater" weight than the other medical opinions in the record.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (Because the ALJ has a duty to fully and fairly develop the record, "[i]f the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them").  The ALJ erred in failing to clarify the ambiguity as to Dr. Merkel's opinion.

Unsupported RFC

Plaintiff argues that the ALJ's RFC is unsupported because the ALJ stated at the hearing that the first hypothetical he was giving the vocational expert was not based on any particular exhibit, but rather that he had taken Exhibit 4A, which was Dr. Anderson's opinion, and modified it.  On December 17, 2010, Lloyd Anderson, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing and pulling; could frequently climb ramps/stairs; could occasionally climb ladders/ropes/scaffolds, crawl and kneel; was unlimited as to balancing, stooping, and crouching; and should avoid concentrated exposure to hazards such as machinery and heights.[33]

---

[33]Admin. Rec. at 94-95.

Plaintiff argues that Dr. Anderson's opinion, which the ALJ gave "some weight",[34] cannot constitute substantial evidence for the ALJ's RFC because Dr. Anderson opined that plaintiff could perform a limited range of light work, not a limited range of sedentary work as the ALJ found.  In addition, "'[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'"  Ryan v. Comm'r of Social Sec., 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting Lester, 81 F.3d at 831).  Plaintiff insists that the ALJ articulated no basis for finding him capable of a limited range of sedentary work and that the ALJ appears to have made this finding based on the ALJ's own opinion of his capacities, which is not evidence.  See Gonzalez Perez v. Sec. of Health and Human Serv., 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician).

The fact that the ALJ did not rely on one single medical opinion does not mean that the ALJ's RFC was not supported by substantial evidence.  The ALJ also did not rely on his own medical opinion.  Rather, in assessing plaintiff's RFC, the ALJ expressly stated that the RFC was supported "by the findings and opinions found in treating physician notes and physical therapy records, in conjunction with the findings of the state agency's

---

[34]Admin. Rec. at 33.

reviewing physicians."[35]  The ALJ did not rely solely on Dr. Anderson's opinion, but also relied on Dr. Merkel's opinion, Dr. Briggs' opinion, and Dr. Keer's opinion.  And, Dr. Anderson's opinion that plaintiff could perform a limited range of <u>light</u> work can be supporting evidence for the ALJ's finding that plaintiff could perform a limited range of <u>sedentary</u> work.  A finding that a claimant has the capacity for light work includes a finding that he has the capacity for sedentary work.  <u>See</u> 20 C.F.R. § 404.1567(b).

<u>Credibility</u>

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  <u>Garrison v. Colvin</u>, --- F.3d ---, 2014 WL 3397218, at *15 (9th Cir. 2014).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  <u>Id.</u> (quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'"  <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1282).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1282).  "If the claimant

---

[35]Admin.  Rec. at 33.

-14-

satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at *16 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" Id. at 1112-13 (internal citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113.

The ALJ found plaintiff less than credible based on the receipt of unemployment insurance benefits "because receipt of such benefits is commensurate with the understanding that the claimant is able-bodied and actively looking for work....[36]  The ALJ also noted that plaintiff had submitted up to 16 job applications since his alleged onset date and found that this "is not entirely consistent with his disability claim."[37]

These were not clear and convincing reasons to find plaintiff less than credible because it is defendant's policy that the "[r]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits."[38]  Under the five-step sequential analysis used to determine whether a claimant is disabled, "a person can qualify for Social Security disability benefits even though he or she remains capable of performing some work."[39]  The "receipt of unemployment benefits" only "undermine[s] a claimant's alleged inability to work fulltime," if the claimant holds himself out as available for full-time work. Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008).  Contrary to defendant's contention, the evidence in the record does not establish that plaintiff was holding himself out as available for full-time work.  The record does not include plaintiff's

---

[36]Admin. Rec. at 31.

[37]Admin. Rec. at 30.

[38]Admin. Rec. at 224.

[39]Admin. Rec. at 224.

application for unemployment benefits so the court cannot tell whether plaintiff was holding himself out as available for full-time work.  See Jenson v. Colvin, Case No. CV–13–01018–PHX–BSB, 2014 WL 1878449, at *11 (D. Ariz. May 9, 2014) ("ALJ erred in discounting the claimant's subjective complaints based on his receipt of unemployment benefits when the record did not include the unemployment benefits application"). Plaintiff's testimony that he was looking for "[j]ust about anything" in the way of work does not indicate whether he was looking for full-time or parti-time work.[40]  And, the comment plaintiff made to his physical therapist on June 24, 2010 that he was "hoping to resume working activities over the next month pending continued progress and physician[']s approval"[41] does not indicate whether plaintiff hoped to work full-time or part-time.

The ALJ also found plaintiff less than credible because he reported that his condition improved with physical therapy.  This was not a clear and convincing reason.  While an ALJ may permissibly discount credibility when a claimant "respond[s] favorably to conservative treatment...," Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008), a claimant's report of improvement from time to time does not detract from credibility because "[t]his is unlikely behavior for a person intent on overstating the severity of h[is]

---

[40]Admin. Rec. at 50.

[41]Admin. Rec. at 308.

ailments." <u>Reddick v. Chater</u>, 157 F.3d 715, 724 (9th Cir. 1998).

The ALJ also found plaintiff less than credible because although plaintiff complained of severe pain, he only took prescription ibuprofen. An "'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment' is a relevant factor in assessing credibility of pain testimony...." <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991)). But, here, although plaintiff declined Dr. Merkel's offer to prescribe stronger pain medication[42] and although he told Dr. Rowley that he wanted to take as little medication as possible,[43] he did agree to a prescription for stronger pain medication to be used during bad flare-ups.[44] Thus, this was not a clear and convincing reason to find plaintiff less than credible.

The ALJ also seemed to suggest that plaintiff was less than credible because some of his physical examination findings were normal. The ALJ cited to two of Dr. Merkel's treatment notes, one from October 19, 2010 and one from January 1, 2011.[45] This was not a clear and convincing reason for finding plaintiff less than credible. First of all, Dr. Merkel did not see plaintiff on January 1, 2011. In fact, Dr. Merkel stopped treating plaintiff on

---

[42]Admin. Rec. at 232.

[43]Admin. Rec. at 356.

[44]Admin. Rec. at 364. (On January 11, 2011, plaintiff was given 15 tabs of Norco for severe pain flare-ups.)

[45]Admin. Rec. at 32.

October 19, 2010.  Secondly, on October 19, 2010,  plaintiff's physical exam of his lumbar spine was not entirely normal as Dr. Merkel found that the "range of motion is guarded in all directions."[46]

Finally, the ALJ appeared to find plaintiff less than credible based on his daily activities.[47]  This was not a clear and convincing reason because the activities that the ALJ listed (doing some chores and exercise, visiting friends, going out to dinner, and going fishing) do not translate into a finding that plaintiff could work full-time.

In sum, the ALJ erred in finding plaintiff less than credible.

Step four

At step four, the ALJ found that plaintiff could "perform past relevant work...."[48] This finding was based on the vocational expert's testimony.  The ALJ stated that the vocational expert "testified that based upon the claimant's residual functional capacity, he would be able to perform his past relevant work as project manager and estimator, both as actually and generally performed."[49] This was error because the ALJ found that plaintiff

---

[46]Admin. Rec. at 367.

[47]Admin. Rec. at 31.

[48]Admin. Rec. at 33.

[49]Admin. Rec. at 33.

had "the need for frequent changes in position"[50] and the vocational expert testified that neither the job of estimator nor project manager "would necessarily provide a frequent position change."[51]  The vocational expert testified that there would be no past relevant work if there was a need for frequent changes in position.[52]

An ALJ's step four determination is harmless error if "the ALJ properly concluded as an alternative at step five that [the claimant] could perform work in the national and regional economies." Tommasetti, 533 F.3d at 1044.  Here, the ALJ did not make any alternative step five findings.[53]  Thus, the ALJ's step four error was not harmless.

Remand

 Because the ALJ erred as to Dr. Merkel's opinion, plaintiffs' credibility, and at step four, the court must determine whether to remand this matter for further proceedings or an award of benefits.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th

---

[50]Admin. Rec. at 30.

[51]Admin. Rec. at 68.

[52]Admin. Rec. at 68.

[53]As defendant points out, the vocational expert testified that a hypothetical person who had limitations consistent with the ALJ's RFC could work as a customer service representative, an information clerk, and a telephone order clerk.  Admin. Rec. at 68-69.  But, the ALJ did not address this testimony in his decision.

Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. However, the court is required "to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 2014 WL 3397218, at *21.

If plaintiff's testimony were credited as true, then plaintiff would be disabled because plaintiff testified that he has to lay down for 3-4 hours every day[54] and the vocational expert testified that someone with that limitation could not work.[55] But, here, an evaluation of the record as a whole, as it currently exists, creates serious doubt that plaintiff is disabled. In this case, Dr. Merkel's opinion needs to be clarified and the ALJ may need to make step five findings, depending on what that clarification reveals. Thus,

---

[54]Admin. Rec. at 54-55.

[55]Admin. Rec. at 74.

a remand for further proceedings is appropriate.

Conclusion

The decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this <u>4th</u> day of August, 2014.

/s/ H. Russel Holland<br>United States District Judge